**BEAR, STEARNS & CO., INC.,**
Plaintiff–Appellant,

v.

**M.T. AMAD, Defendant–Appellee.**

No. 90–2308
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1990.

J. Michael Dorman, Karen L. Fannin, Liddell, Sapp, Zivley, Hill & LaBoon, Houston, Tex., for plaintiff-appellant.

Howard Nations, Randy G. Allen, Houston, Tex., defendant-appellee.

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Bear, Stearns & Co., Inc. ("Bear Stearns") appeals the district court's order requiring it to accept $100,000 in cash and certain real property in satisfaction of defendant's judgment debt. Bear Stearns argues that the Texas Turnover Statute, Tex. Civ.Prac. & Rem.Code Ann. § 31.002(b)(2), does not authorize courts to order direct transfers of real property to judgment creditors. We agree and, therefore, reverse and remand for further proceedings.

I

Bear Stearns obtained a $323,386.91 money judgment against the defendant M.T. Amad and thereafter registered the judgment in the United States District Court for the Southern District of Texas. That court issued a writ of execution pursuant to state law,[1] but it was returned by a United States Marshal with the notation that Amad was unable to satisfy the debt.

In the meantime, Bear Stearns and Amad entered into vigorous settlement negotiations in an effort to determine whether Amad owned sufficient assets to satisfy the judgment. Bear Stearns registered the judgment in the United States District Court for the Eastern District of Texas in anticipation of executing on certain real property owned by Amad in Trinity County, Texas. Apparently at some point during the negotiations, and the facts are disputed, Bear Stearns suggested that a cash offer as well as title to the Trinity property might settle the matter. An impasse was reached in negotiations because of Amad's alleged inability to raise a sufficient amount of cash.

Bear Stearns then filed a Motion for Charging Order and Turnover Order and for Appointment of Receiver over Judgment Debtor in the United States District Court for the Southern District of Texas, requesting the court's assistance in collecting the debt pursuant to Fed.R.Civ.P. 69

---

1. Federal Rule of Civil Procedure 69 provides for the enforcement of money judgments according to procedures established under state law.

and the Texas Turnover Statute. That statute provides, in part:

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property....
>
> (b) The court may:
>
> (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;
>
> (2) otherwise apply the property to the satisfaction of the judgment; or
>
> (3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

Tex.Civ.Prac. & Rem.Code Ann. § 31.002(b)(2). The primary purpose of the Turnover Statute is to allow, as an additional and cumulative method to aid in the collection of his judgment, a judgment creditor to seek a court order requiring the debtor to disclose and turn over certain assets, documents, and records to be applied towards satisfaction of the judgment. "The actual effect of the bill is to require the burden of production of property which is subject to execution to be placed with the debtor instead of a creditor attempting to satisfy his judgment...." House Comm. on Judicial Affairs, Bill Analysis, Tex. H.R. 1260, 66th Leg. (1979).

In this case, Bear Stearns invoked relief under the statute to force Amad to disclose various suspected partnership and property interests. In this connection, the district court entered an order directing Amad to appear and explain why a receiver should not be appointed. In addition, Amad was ordered to bring commercial paper and securities in excess of $400,000, his last year's income tax return, and deeds and mortgages on any real estate in which he claimed an interest.

On April 27, 1989, the district court held an in-chambers conference hearing on Bear Stearns' motion. Only the attorneys for the parties were present, neither of whom objected to the informality of the proceedings. Amad, through his attorney, informed the court that the only unencumbered nonexempt real property owned by Amad was ten acres of real property, purchased by him in 1987 for $330,000 with an appraised value in 1986 of $370,000. Bear Stearns did not dispute this valuation of the Trinity County property. Amad then offered to convey title to the real property to Bear Stearns and, in addition, pay $100,000 in cash for a full release from the judgment. Bear Stearns objected to a direct transfer of the property, asking the court instead to order the property sold at an execution sale so that the net proceeds generated from the sale could be applied towards satisfaction of the judgment.

The district court found that all other assets owned by Amad were either encumbered or exempt from execution and further concluded that the direct transfer combined with the cash payment was a realistic approximation of the value of the judgment against Amad. The trial judge thereupon ordered Amad to tender to Bear Stearns $100,000 and a general warranty deed to the Trinity property and ordered Bear Stearns to execute a satisfaction of judgment upon tender of those items.

Bear Stearns refused to accept either the deed or the cash from Amad and filed a Motion for Reconsideration, for Relief from Order, to Alter or Amend Judgment and for New Trial, and Memorandum in Support Thereof. Bear Stearns asked that the court's previous order be vacated, that Amad turn over $100,000, and that the Trinity property be sold in an execution sale. The district court denied Bear Stearn's motion. 732 F.Supp. 63. Bear Stearns filed a timely notice of appeal.

## II

Bear Stearns argues, *inter alia,* that the trial judge exceeded the scope of his authority under the Texas Turnover Statute by ordering it to accept a direct transfer of

the Trinity property in satisfaction of Amad's judgment debt. As quoted earlier, the Turnover Statute permits a court to "(1) order the judgment debtor to turn over nonexempt property ... to a designated sheriff or constable for execution; (2) [to] otherwise apply the property to the satisfaction of the judgment; or (3) [to] appoint a receiver with the authority to ... sell it, and pay the proceeds to the judgment creditor...." Tex.Civ.Prac. & Rem.Code Ann. § 31.002(b)(2). The trial judge based his decision to order a direct transfer of the property on the "otherwise apply" language of the statute.

The Texas Supreme Court in *Ex parte Johnson*, 654 S.W.2d 415, 418 (Tex.1983), however, construed the predecessor statute to this section as precluding a direct turnover of a judgment debtor's assets. "In light of [the legislative history of the act], we cannot presume the legislature intended ... to deny judgment debtors any measure of judicial protection in post-judgment collection proceedings. The potential for error or abuse where turnover is ordered directly to judgment creditors is obvious, considering that the statute allows ex parte entry of the order without notice and hearing." *Id.* We realize that in this instance, it is the judgment creditor, rather than the debtor, who objects to the transfer. We cannot accept, however, that this factual distinction precludes the application of the *Johnson* precedent to all cases, irrespective of which party claims to have suffered injury on account of the turnover order; the law must be applied evenhandedly.

Amad argues, however, that the codification of the Turnover Statute into the *Texas Civil Practice and Remedies Code* in effect, overruled *Johnson*. Amad contends that by numerically separating the "otherwise applied" provision of the statute, the legislature broadened the authority of the court with respect to turnover orders. Any other interpretation, according to Amad, would render the "otherwise applied" language meaningless. The previous version of the statute at the time Ex Parte Johnson was decided, was not numerically divided, and read as follows:

(b) The court may order the property of the judgment debtor ..., together with all documents or records related to the property, that is in or subject to the possession or control of the judgment debtor to be turned over to any designated sheriff or constable for execution or otherwise applied toward the satisfaction of the judgment.

Tex.Rev.Civ.Stat.Ann. art. 3827a (Vernon 1980). It is obvious to us, however, that the new format only resulted from Texas's continuing statutory revision program and was not intended by the legislature to result in any substantive change in the law. *See* Tex.Civ.Prac. & Rem.Code Ann. § 1.001(b) (Vernon 1986); *see also Barlow v. Lane*, 745 S.W.2d 451 (Tex.App.1988) (citing *Johnson* as precedent for interpreting present version of Turnover Statute). Our disposition of this case does not require us to determine the exact meaning of the "otherwise applied" language. We only conclude that, *Erie* bound as we are, Texas case law does not interpret the statute as authorizing direct transfers of property.

Amad maintains, in the alternative, that the language of the Turnover Statute and the *Johnson* decision are not an issue in this case because the district court's order was the result of a negotiated settlement and therefore, the trial judge acted within his inherent authority when he incorporated the parties' own agreement into a final judgment. Contrary to Amad's version of the facts, the record reveals that Bear Stearns objected to a direct transfer of the property at both the informal hearing on its initial turnover motion and on the hearing on its motion for reconsideration; thus, we cannot accept the argument that the turnover of the Trinity property as provided in the order was negotiated.

We therefore conclude that the district court erred by ordering Bear Stearns to accept $100,000 and title to the Trinity property in full satisfaction of Amad's judgment debt. Our construction of the Texas Turnover Statute renders Bear Stearn's due process arguments moot.

For the foregoing reasons, we REVERSE the order of the district court and REMAND for further proceedings.

REVERSED and REMANDED.